Good afternoon. We'll call the case of In Re Blood Reagents antitrust litigation. And, Mr. St-Antoine? Am I pronouncing that correctly? I blew some Italian in the speech that is appropriate, not accurate. I've heard a lot of variations for that purpose. Good afternoon, Your Honors. My name is Paul St-Antoine. I'm from the law firm of Drinker Fiddle and Reith on behalf of the Appellant Ortho Clinical Diagnostics. Mr. Smith, I would like to reserve three minutes for rebuttal. Thank you. Ortho appeals the decision from the District Court to certify a class of direct purchasers of traditional blood reagents in a price-fixing case that presents unique evidentiary challenges for the plaintiffs. The District Court's decision is in conflict with the standards of class certifications set forth by this Court in hydrogen peroxide and, more recently, by the Supreme Court in the Comcast case. In its decision, the District Court... So, are you asking us to remand or are you asking us for an outright reversal? On the record as a whole, Judge Sirico, we believe that the plaintiffs have not met their burden of demonstrating the requirements of Rule 23b-3. So, while we understand that the Supreme Court's decision was issued after the District Court ordered a class certified, we believe that there was sufficient guidance under this Court's hydrogen peroxide decision and that the plaintiff, on the record as a whole, has not met its burden under hydrogen peroxide so that class can be denied. But you might... It seems to me that you could take into consideration the fact that in the Third Circuit Comcast case, it seemed to call into question some of the standards from some of our earlier cases and it appeared that the District Judge here relied on our Third Circuit opinion in applying it under the standards of Comcast and hydrogen peroxide. Judge Sirico, we do recognize that the District Court relied on several instances and statements made by this Court in the Comcast case, particularly with respect to its decision to defer a hard look. It's pretty significant, isn't it? Yes, we understand that. But in terms of the record reflects, in terms of particularly what the plaintiff's expert failed to do, we also, while we recognize the additional guidance provided by the Supreme Court in Comcast, we also believe that on this record it is possible to find that the plaintiffs have not met their burden in meeting the dictates. Well, it's a little more than additional guidance. They reversed our case. Again, wouldn't it make more sense just to send this back to the District Court, allow them to consider all of your arguments in the first instance with this new landscape? Your Honor, we do recognize, ORCA does recognize, and that is the approach that a number of courts have taken. The D.C. Circuit took that case, and we understand that. It is an additional point that we advocate that even looking at this from a hydrogen peroxide perspective and viewing that decision as giving sufficient guidance, we think on the record as a whole, that the plaintiffs haven't met their burden. But we do understand the Court's point on that. Perhaps, you know, I'm interested again in your assessment of Dr. Byers' methodology or lack of methodology and how he would prove the difference. What are the defining differences between the duopoly here and illegal conduct? And what is it that you think that plaintiffs expert must be able to prove in these circumstances? Right. As the District Court recognized, and when I referenced the unique evidentiary challenges, what I was referring to most notably was that there was a significant change in market structure just prior to the inception of the alleged conspiracy. The Court recognized that this and Dr. Byers recognized that given the coincidence of those two events that he was unable to rely on traditional methods. Together with the fact that the conspiracy was still ongoing at the time, right? And he did not have any post-conspiracy price information to work with. The conspiracy in the complaint was alleged to have begun on January 1st, 2000 or earlier. For purposes of his analysis, he assumed a conspiracy beginning in November of 2000. If you think of price estimates as a function of market structure, cost, and demand factors, our view is that Dr. Byer ignored demand, ignored cost, and took an unscientific, non-empirical assessment on the key issue of market structure. That's an issue of methodology, which of course would seem to implicate Daubert. You didn't spend much time discussing Daubert in your brief, as I recall. But query, are we able and more importantly, is a district judge at the certification stage able to evaluate this kind of expert testimony from an economist as to market structure and those other factors he takes into account methodology-wise without using Daubert? I want to hear from the other side, obviously, on this. What the district court does, and this is consistent with the rigorous analysis that it must do, is it should take a hard look at the methodology. I understand. That doesn't answer my question. I mean, you're not directly answering my question and I'm curious as to why. Daubert is very much front-loaded to require a judge to act as a gatekeeper, and that gatekeeper is required to look to questions of methodology and whether or not they're more than generally accepted. So we have cases out there where Daubert has been accepted. We have a couple different Daubert approaches, in fact, across the circuit. So I want to know whether you think it is intrinsic to the district judge's role at the certification stage, presented with expert testimony, to apply Daubert whether or not a party asks the judge to? The answer, Your Honor, is yes on where the expert testimony bears on the issue of predominance as it does here. Now what we did is throughout the class proceedings we objected to the reliability of Dr. Byers' methodology. We did it in our class papers. In our brief we referenced the standard of Daubert. That's Daubert too, isn't it? Yes. I mean, you don't have to invoke Daubert for the reliability of methodology to be a Daubert related question. Yes, that's right, Your Honor, and courts have recognized that whether you use the name Daubert on these issues, you are engaging in a Daubert-type analysis. Judge Young in the recent NXIVM decision recognized that his findings at the class certification stage were akin to the findings that a judge would make under Rule 702. That's actually addressing a point your adversary made. I believe they put in their brief that you waived a Daubert challenge because you didn't raise it specifically. Do you need to raise it specifically? You need to raise the objection of reliability. You have to put the court and the plaintiff on notice that you're challenging the reliability of the plaintiff's expert. We believe we did do that, but ultimately it's the plaintiff's motion for class certification that triggers the rigorous analysis, and when there's an objection to reliability as there was here, the court must engage in that kind of hard look at the methodology. And of course, none of this is to say that the application of Daubert at that stage bars the parties from revisiting the issue if certification is granted and you go to trial. I mean, the consideration of the expert testimony pursuant to a Daubert analysis doesn't foreclose the party opposing consideration of the evidence from raising the issue once again. Well, that's a very interesting issue that plays out procedurally because Dr. Byers' report here, after all, was offered in support of class certification. It was not tendered as a merits report. Indeed, he did not submit a merits report until after the hearing on the matter. If class happened to be granted, you would still have an opportunity to challenge the merits report with the traditional Daubert analysis. But the point is that the inquiry that the court makes, whether it's at the class stage or in a later Daubert stage, overlaps because it looks at the methodology. And if the merits report happens to be similar to the class report, the questions asked might be very similar. For the purposes of certification and methodology and providing a way to offer common proof, what is the significance of the fact that the nontraditional regents were not included in the analysis here? What this does is present a separate but important issue from our challenge to the basic reliability of this model. Dr. Byers took, in our view, an impermissibly narrow view of what impact means. He stated in his report and in his testimony that if a single reagent within the mix of products was above the but-for price, then he showed antitrust impact. Even if every transaction from a member of the class, every transaction price, was below the but-for price. And nontraditional reagents are part of the mix purchased by members of this class. Indeed, during the class period, they became an increasingly significant portion of those products. And it's your position that they are an acceptable substitute for a large number of the traditional reagents? The empirical evidence shows that for many members of the class, they were. Because during the period of the class, a large portion of the class members transitioned from traditional to nontraditional, basically because they served the same function. There are different physical characteristics, but they serve the same function of typing and screening blood. Because the methodology does not accept your view of net effects here, you think it's flawed? And I should emphasize, Judge Sirica, that this is a separate but important challenge to Dr. Byer's methodology. Because if you include them, as the plaintiff included them as an alleged part of the conspiracy, then you would want to know, are the members of the class harmed? And to understand whether they are harmed, you have to look at the mix of products that they were buying throughout the class period. And one of the mix, in addition to all the variety of different traditional reagents, among the mix was nontraditional reagents. Part of the alleged conspiracy, they weren't just any other product, they were part of the alleged conspiracy. And what we do know empirically is that the pricing for those products was flat, giving some real issue about whether the net effect of the product would be uniform across the class. When we refer to, and you refer to, Dr. Byer's methodology, in fact, there were two proffered methodologies, weren't there, by Dr. Byer? He actually ultimately has four variations. All of them stem from our view of a flawed benchmark, relying on the business records. All of them ignore costs and demand for the first five years. The variation comes in the latter part of the class period, where he uses alternative yardsticks. He used a Rogam yardstick, again, another measure that the court had some real doubts about at the class stage, and he also uses costs selectively for the latter part of the class stage. And then he makes an attempt, using the same benchmarks, in recognition that prices for individual traditional reagents may have gone up differently. I see that my time is up, your honors. I just wanted to briefly note that a separate issue that we raised in our papers relates to the product and the concealment issue. And again, with a similar theme, we think that the court took an impermissible wait-and-see approach on that issue, instead of providing a trial plan. We'll have you back on rebuttal. Thank you. Mr. Corrigan. Good afternoon, your honors. Jeff Corrigan from the firm Specter, Roseman, Kodroff & Willis, representing Class Plaintiffs. This case is a little interesting because when we filed our papers, Comcast really hadn't been actively interpreted by many courts, and it has been now, and it's being interpreted all the time. Most of the courts that have interpreted it have interpreted it very narrowly, saying that what it stands for is that theory of liability has to overlap with the damages methodology. And in this case, there's never been a contention that that's not it, that that's not the case, nor could there be. We have one theory of liability and one damages model. It's not the Comcast case. It's very straightforward. So that being the case, if Comcast doesn't impact the ruling in this case, it falls back to the hydrogen peroxide standard. Excuse me, could you explain again why Comcast doesn't impact this case? This case has a very straightforward theory of liability. The defendants fixed prices, prices went up as a result, and we bought at the higher price. Comcast's case had four different theories of liability. The damages model only determined damages from one of those theories. The other three, for all four of those theories, I'm sorry, three of which had been ruled out by the district court. No, I understand that, but that's all that Comcast says? Well, there are several cases. The Butler case in the Seventh Circuit, the Whirlpool case in the Sixth Circuit, the Lava case in the Ninth Circuit, the Nexium case that Mr. St. Antoine just mentioned in the District of Massachusetts. As outlined above, Comcast has not changed the rule on what is required for damages models in establishing Rule 23b3 predominance. Comcast simply requires the moving party to present a damages model that directly reflects and is linked to an accepted theory of liability under Rule 23b3. And the Seventh Circuit, Sixth Circuit, and Ninth Circuit holdings are similar. Well, that's understood, but Comcast reversed our precedent, which was relied on by the district court. Of course, we're reviewing a district court decision that relied on our reverse decision. Maybe you'd heard what we'd asked your adversary. Maybe you, I mean, why shouldn't this case be just remanded for reconsideration under the new standard, I guess, or at least the new Supreme Court case? We think that based on the limited narrow holding in Comcast, that the standard that this court used, the hydrogen peroxide standard, is still the same standard. If the same rigorous analysis, the hydrogen peroxide standard in the meantime has also been reinforced by the Amgen case, Supreme Court. You're allowed to review the merits, but only to the extent that they intertwine with Rule 23. That hasn't changed. So if that hasn't changed, then our judge used that very same methodology to certify this class. Now, to be honest, he did cite some language that was criticized by the Supreme Court. I don't think that language is integral to the holding of the Comcast case, but he does cite some language that was found problematic or criticized by the Supreme Court. But procedurally, he did precisely what the Supreme Court said in Comcast he could not do, which is by kicking the can down the road, if you will, it required him to make a kind of speculative judgment regarding the expert testimony. Why isn't that, do you challenge that that's exactly what Comcast prohibits? Yes. What he said was he determined all the Rule 23 requirements as set out in hydrogen peroxide. I mean, he did all the merits inquiries. He weighed all the expert testimony that weighed on the Rule 23 requirements. He was not required to go beyond that. What he says in his opinion is that is a merits issue that is not intertwined with Rule 23. So we think that he did that. Now in terms of the language that was cited, the language that was criticized by the Supreme Court, we cited a case, the Constar case, 2009 Third Circuit case, that basically says even if a judge cites the wrong standard, don't just look at what he said, look at what he did. And in that case, Third Circuit looked at what he said, and the standard was off, it was wrong. But when they looked at the analysis, they said what he did was right. Now there's a couple other cases, the Whirlpool case I mentioned a minute ago, and there's another case, the Gooch case in the Sixth Circuit, said the very same thing. The standard that the judge cited was wrong, but the analysis he did was sufficient. And at the end of the day, that was enough. So the Whirlpool case did not remand it back to the District Court. The Butler case, Judge Posner in the Seventh Circuit, also did not remand it. The Supreme Court kicked it back to the Seventh Circuit and said we'd like you to take a look in light of the Comcast case. They looked at it and said the judge did enough. We don't need to remand it. So Judge Du Bois did just that. He only put off merits-based inquiries that were not intertwined with Rule 23. He looked at the reliability objections. He determined that the methodology was sound. But there has to be something left for the merits. I mean, under Orko's view, there were no merits left for the merits. It all has to be decided right now. But that's not what hydrogen peroxide nor Amgen says. Now in Footnote 6 of their opening brief, they said the one point where they say that something has to be determined on the merits and should be put off until now. And that's this meeting with Judy Thorne and David Jandusa. They say that's a pure merits issue. But in fact, that is at the heart of why Dr. Byers selected his benchmark. A benchmark is supposed to be free of collusive activity. Now they say that he could use the BBLP instead of the OCB. I'm using terms there just to save time. But the BBLP is riddled with collusive activity. And in fact, that meeting with Judy Thorne and David Jandusa, David Jandusa, it's right out of sort of a price-fixing primer, this meeting. And he shows an executive at Ortho, shows an executive at Imicor, the BBLP price list. The BBLP is therefore, and there's other conspiratorial conduct that surrounds the BBLP. So that meeting is at the heart of Dr. Byers' selection of the OCB as his benchmark. And the court found that it was just, that it was proper, that he selected that benchmark. And that it did account for the change in market structure from a duopoly to a conspiracy. But under the hydrogen peroxide standard as bolstered by Amgen, Judge Du Bois was not required to answer every merits inquiry, only the ones that are intertwined with Rule 23. And we say that's just what he did. And the courts that have recently interpreted Comcast, again, the narrow holding, we do not think impacts this holding. It's a straightforward theory of liability that is directly connected to our damages theory. Ortho has not said that it's not, nor could they. That being the case, it falls back to hydrogen peroxide. And that's what this judge did. We don't think it needs to be remanded. And there were several cases that I mentioned that have shown that it doesn't need to be remanded. They didn't remand it. The judge does enough on the opening go-around. You know, hydrogen peroxide also talks about a careful application of Rule 23. This is again, very carefully done. And part of the reason of concern with the rigorous analysis, hydrogen peroxide talks about this too. The careful application is important to avoid defendants from having to settle weak or non-meritorious claims. This is not a weak claim, and Judge Du Bois certainly doesn't think so. He's quoted in the opinion saying that our theory is highly plausible and backed up by documents and other evidence. So he doesn't think it's a weak claim. So some of the concerns that hydrogen peroxide set out about why we need a rigorous analysis are not present here. But this is a highly detailed, carefully constructed opinion. Can I ask you to switch gears just for a minute? We talked to your adversary about the issue of whether a full Daubert analysis at the class certification stages should be a requirement. What's your position on that? And also, I thought in your brief you'd mentioned you'd thought that any Daubert challenge was waived by your adversary. I have to admit, Your Honor, I think it's unclear. I think the Walmart-Dukes case sort of hinted that it might be required. The Comcast case, one of the things that's very clear in that case, in footnote four, says that basically if they hadn't filed a Daubert motion, it's forfeited. Now, that wasn't the holding of the case. But it's unclear. In some ways, I think it is forfeited. Now, the judge, Judge Du Bois, looked at... But isn't it just a part, isn't it a part of the analysis that a district judge ought to be taking anyway? We think that he covers a lot of that ground in the opinion. I mean, what does Daubert require that the rigorous analysis required by hydrogen peroxide... That's precisely the point. When we say, pursuant to what the Supreme Court has said, that a rigorous analysis is called for, given all the responsibilities that a district judge has in the Rule 23 context, not just for certification, but throughout. But here we're talking certification. Isn't Daubert inherently and necessarily part of her or his job in assessing the reliability of methodology of an expert's testimony? Well, again, we get back to Amgen. The judge is only supposed to be doing merits-based inquiries that are entwined with Rule 23. This is an evidentiary rule. This is an evidentiary standard. This is pursuant to a major decision of the Supreme Court that refers to the judge's gatekeeping role. Now, is that gatekeeping role any less important at the Rule 23 stage than it is at trial? Well, again, Comcast footnote 4 basically says that if they don't file... If they don't make the objection, that it's forfeited. We differ. I don't read it that way at all. Well, I guess it's just unclear, Your Honor. I would grant you that if a party wants a Daubert hearing and a party had to file a motion asking a hearing, that's not the same thing as a judge being required to decide a matter or to make a ruling pursuant to the rules that exist and that are applicable to the question presented to them. And isn't the admissibility well-known, whether it's in a Rule 23 proceeding or on the merits at trial, an evidentiary determination that would require consideration of Daubert principles? It's no less expert testimony at the certification stage than it is expert testimony downstream at trial. It's no less expert testimony, but I would argue... And again, it's unclear, but the admissibility of it is certainly more pertinent at the trial stage. That's where it normally has been done. I understand that the Daubert standard, it's unclear now, and we're having this conversation. But traditionally, admissibility of evidence has been done at the merits stage. And I think traditionally, it could be seen... I mean, that's contrary to what the record itself shows, because the report was admitted for purposes of the certification stage, wasn't it? I mean, the evidentiary standards that apply, re-admissibility of a document or anything may be a little bit more relaxed at the certification stage. I suggest may be. But that's not to say that Daubert rules relative to reliability as to an expert's methodology and its acceptance out there and its being subject to peer review and the other factors that Daubert talks about. I just don't understand your position as to why that ought to be any less at the time of certification than it is later on at trial. Again, it's unclear, Your Honor. I understand your point. I don't think that there's enough law to guide this court to do that right now in this unclear state. I think he did what was required under the law under hydrogen peroxide, which was reaffirmed by Angen. Story Parchment is quoted in there. I think he spent a lot of time doing a very careful analysis under the laws that stood then and which I would say has not really been changed by Comcast. I don't believe that Comcast changed the Daubert inquiry that Your Honor is making now. I think they just talked about it in that one footnote. I understand you're not persuaded by my argument, but I don't believe that they changed the equation on whether a Daubert analysis has to be done right now. The Dukes case mentioned it, again, very sort of tangentially. They just said, I'm not sure that a Daubert analysis is not required at that stage. They certainly didn't say that it was required. The Dukes comment of Justice Scalia certainly leans toward the application of Daubert. It does. But he didn't go farther than that in the Comcast case. In actuality, he might have backtracked a little bit from it in the footnote four. I see my time is up, unless Your Honors have any questions. I have none. Thank you. Thank you very much. Mr. Sankenhorn. Your Honors, three points I want to raise in rebuttal. First, the notion that Mr. Corrigan advanced that, while the district court may have cited language from this court's Comcast decision that had been overturned by the Supreme Court, it did the right thing, I think is belied by the district court's opinion itself. If you look at the economic issues that it did examine in several important respects, it found issues with the methodology, and that includes, for example, the absence of any cost and demand considerations by Dr. Beyer, but very deliberately and in the opinion itself, it made a conscious decision not to examine those and defer to a later stage. Similarly, with respect to the Rogam yardstick, the court on the face of the opinion expressed doubt about, it said it was not entirely persuaded by the fact that Dr. Beyer looked at this product when there were three competitors instead of two, and yet it made a conscious decision to deal with that issue later. And similarly, with respect to the choice of the Operation Create Value over the blood bank leadership program, it deferred on that issue. Secondly, with respect to the point that the court shouldn't get into the merits of the alleged conspiracy, I want to make the point that while Ortho strongly disputes that the evidence in the record and the evidence developed in discovery has any evidentiary support for the notion that there was an agreement for the parties, in opposing class and analyzing Dr. Beyer's methodology, we have accepted the proposition that there was some, by November of 2000, that there was a conspiracy for purposes of the analysis. So even though we very much dispute that, that is not the basis of our reliability criticisms of what Dr. Beyer has done. And finally, although while I may be repeating myself a bit on the Daubert point, I think it bears mentioning that the footnote four that Mr. Corrigan cited talks about whether or not the parties raised an objection to the reliability point, not just a separate motion filed under Daubert. And clearly from the beginning we did, and we did so even in the post-hearing testimony from Dr. Beyer, we made a standing objection to the reliability of his testimony on the key issue of antitrust impact. Thank you, Your Honors. Thank you very much, Mr. San Antoine, Mr. Corrigan. Thank you for a very well-argued and a very interesting case. We'll take the matter under advisement and we'll ask the court to recess the proceedings. Please rise. This court stands in recess until 3 p.m. in the National Court. Thank you.